IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA B.; and R.B., | ) |
| | ) |
| Plaintiffs, | ) 2:21-CV-578 |
| | ) |
| v. | ) |
| | ) |
| JAMES E. SHAW, SR.; and JESSE SNYDER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

In October 2020, a high-school student was stopped on school grounds by two school police officers for vaping. One officer (Shaw) threw the student to the ground, before tightly cuffing him. The other officer (Snyder) stood by his side and did nothing. From this incident (which was mostly captured on video), the student filed suit, alleging claims for excessive force, failure to intervene, and false imprisonment. Officer Snyder has now moved for summary judgment. On careful review of the motion and the record, the Court finds that there are genuine disputes of material fact on one aspect of one claim: Officer Snyder's failure to intervene when Officer Shaw handcuffed the student. That claim may proceed to trial; the rest of the claims fail as a matter of law.

## PROCEDURAL BACKGROUND

On May 3, 2021, Linda B. filed a complaint on her own behalf and on behalf of her minor son, R.B., against two school police officers, James Shaw and Jesse Snyder. The complaint asserted claims of excessive force and false imprisonment under Section 1983 and tort claims under Pennsylvania law related to an incident that occurred in the Connellsville Area Senior High School's parking lot. ECF 1. Shortly after, Officer Shaw moved to stay the case pending the outcome of his criminal

prosecution of charges related to the same incident. ECF 7. The Court granted Officer Shaw's motion to stay. ECF 11. The stay was later lifted after Officer Shaw's criminal case was resolved by plea. ECF 13; ECF 15. Officer Shaw then answered the complaint. ECF 17. Shortly after Officer Shaw answered, his counsel moved to withdraw, and the Court granted the motion. The Court directed Officer Shaw to either obtain new counsel or file a notice on the docket that he intended to represent himself. ECF 18; ECF 21. He did neither.

On October 18, 2022, Plaintiffs moved to amend their complaint, and the Court granted that motion. ECF 27; ECF 28. Plaintiffs filed an amended complaint on October 21, 2022. ECF 29. The amended complaint alleged six counts: Count I, Fourth Amendment excessive force against both Defendants (ECF 29, p. 5); Count II, Fourth Amendment false imprisonment against both Defendants (*id.* at p. 7); Count III, PA Assault and Battery against Officer Shaw (*id.* at p. 8); Count IV, PA false imprisonment against both Defendants (*id.* at p. 9); Count V, PA invasion of privacy/intrusion upon seclusion against Officer Shaw (*id.* at p. 11); and Count VI, PA IIED against both Defendants. *Id.* at p. 12. All six counts in the amended complaint arise from an incident between the officers and R.B. that occurred in October 2020 at the Connellsville Area Senior High School. *See id.*

On November 3, 2022, Officer Snyder moved to dismiss the amended complaint. ECF 30. The Court granted Officer Snyder's motion to dismiss as to Count VI, but denied it in all other respects. ECF 36. Officer Snyder then filed an answer with a crossclaim against Officer Shaw. ECF 41. Officer Shaw failed to answer or otherwise respond to the amended complaint (or the crossclaim) and as a result the Clerk of Court entered default against him on August 24, 2023. ECF 55.

Plaintiffs and Officer Snyder then proceeded to fact discovery. After discovery, on November 20, 2023, Officer Snyder moved for summary judgment on Counts I, II,

and IV, which are the remaining claims against him. ECF 61. The parties briefed the motion, and it is ready for disposition.

## FACTUAL BACKGROUND

The material facts here are rather narrow. On October 17, 2020, Officer Snyder observed a student (later discovered to be R.B.) vaping on school property at the Connellsville Area Senior High School. ECF 63-1, 24:2-25:3. Vaping on school property is a violation of school policy. *Id.* at 25:14-16; ECF 63-2, 13:10-14. So Officer Snyder, along with Officer Shaw, approached R.B. outside the school near the parking lot to investigate and inquire further. Exhibit J-4 (surveillance footage). R.B. failed to comply with their commands. *Id.*

Then, in an incident captured on video, Officer Shaw took R.B. to the ground, quickly, without warning, and in a somewhat violent manner. *Id.* He cuffed him, and both officers escorted R.B. into the school to the assistant principal's office, which, from the video, reasonably appears to be some distance away. *Id.* Along the way, R.B. testified that he complained about the handcuffs being too tight. ECF 63-2, 28:11-18. But the cuffs weren't removed until everyone arrived at the office. ECF 63-1, 43:6-9; ECF 63-2, 29:22-25. R.B. suffered bruising on his wrists due to the handcuffs that lasted about two days, though he sought no medical attention. ECF 63-2, 37:17-24; 38:2-4, 38:12-13.

## **DISCUSSION & ANALYSIS**[1]

**I.    Failure to intervene.**

In Count I, Plaintiffs allege that Officer Snyder is liable under Section 1983 for failure to intervene to stop Officer Shaw's alleged use of unreasonable force. ECF 29, ¶¶ 35-37. Officer Snyder argues that he is entitled to summary judgment on Count I because "the undisputed and material facts reveal that Defendants had probable cause to confront [R.B.] to obtain his information and to enforce school district policy and state law." ECF 62, p. 9. Officer Snyder argues that summary judgment is proper because (1) the force Officer Shaw used was reasonable in light of the facts of the case because Officers Shaw and Snyder had probable cause to stop R.B.; (2) R.B. has not sustained an injury; and (3) even if Officer Shaw did use excessive force, Officer Snyder had no time to intervene. *Id.* at pp. 9-11.

In response, Plaintiffs argue that: (1) because Officer Shaw defaulted, he is considered to have admitted all of the factual allegations in the complaint, including that he used unreasonable force against R.B., so Officer Snyder's argument that Officer Shaw didn't use unreasonable force must fail; and (2) in the alternative, there is a dispute of fact over whether the force was reasonable that must be decided by the jury. ECF 66.

As an initial matter, Officer Shaw's default does not mandate denial of Officer Snyder's motion for summary judgment. This is so for two reasons. First, while

---

[1] The Court applies the familiar summary-judgment standard under Rule 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up).

reasonableness under the Fourth Amendment certainly involves the weighing of a number of facts, it is ultimately a legal conclusion. *Damiani v. Duffy*, 277 F. Supp. 3d 692, 702 (D. Del. 2017), *aff'd*, 754 F. App'x 142 (3d Cir. 2018). And "a party in default does not admit mere conclusions of law." *J&J Sports Prods., Inc. v. Ramsey*, 757 F. App'x 93, 95 (3d Cir. 2018) (cleaned up). Second, more generally, "courts exercise caution with respect to motions for default judgments in cases involving multiple defendants.". *J & J Sports Prods., Inc. v. Archie*, No. 17-745, 2019 WL 1125876, at *3 (M.D. Pa. Mar. 12, 2019). That caution is certainly appropriate here, where the claim against Officer Snyder is distinct, and it would be inequitable to hold him liable for his co-defendant's failure to answer. So the Court does not give the default against Officer Shaw any weight here.

Turning to the merits of the claim, "[a]n excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth Amendment's protection from unreasonable seizures of the person." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). "To state a claim for excessive use of force under the Fourth Amendment, a plaintiff must show (1) that a seizure occurred using force, and (2) that the use of force was objectively unreasonable." *Estep v. Mackey*, No. 11-207, 2013 WL 6533350, at *4 (W.D. Pa. Dec. 13, 2013) (Gibson, J.). The test for whether force is reasonable under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Additional factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Rivas v. City of*

*Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (cleaned up). "The reasonableness of the use of force is normally an issue for the jury." *Id.*

To succeed on a failure-to-intervene claim, the plaintiff must establish: (1) a constitutional violation took place in the defendant's presence; and (2) the defendant had "a realistic and reasonable opportunity to intervene." *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002).[2] In a failure-to-intervene claim, a "police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, but only if there is a realistic and reasonable opportunity to intervene." *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (cleaned up). "[C]ourts in the Third Circuit routinely find that there is no realistic opportunity when the time to intervene is momentary and merely a matter of seconds." *Parnell v. Jackson Twp.*, No. 21-19326, 2024 WL 2767896, at *7 (D.N.J. May 30, 2024) (cleaned up) (collecting cases). If there is video evidence such that no reasonable jury could find that a defendant had an opportunity to intervene, summary judgment on that issue is appropriate. *See Wenzel v. Bovee*, No. 20-291, 2022 WL 4236715, at *4-5 (W.D. Pa. Sept. 14, 2022) (Baxter, J.); *Byrnes v. Moody*, No. 15-570, 2016 WL 4508245, at *5 (W.D. Pa. Aug. 29, 2016) (Lenihan, Mag. J.). On the other hand, if the incident involving the use of force lasts several minutes, that can be sufficient to create a genuine issue of material fact sufficient to survive summary judgment. *El*, 975 F.3d at 336.

---

[2] In *Smith*, the Third Circuit examined a failure-to-intervene claim in the context of the Eighth Amendment. *Smith*, 293 F.3d at 650. While this case involves the Fourth Amendment and not the Eighth Amendment, district courts in this circuit have consistently applied the reasoning in *Smith* to Fourth Amendment unreasonable force/failure-to-intervene claims. *See, e.g.*, *Wilson v. Miller*, No. 13-1763, 2018 WL 5817006, at *4 (D. Del. Nov. 5, 2018); *Estep v. Mackey*, No. 11-207, 2013 WL 6533350, at *6 (W.D. Pa. Dec. 13, 2013) (Gibson, J.); *Fernandez v. Stack*, 2006 WL 777033, at *12 n.8 (D.N.J. Mar. 27, 2006).

Here, there are two distinct incidents of unreasonable force: (1) Officer Shaw's actions in putting R.B. on the ground; and (2) Officer Shaw's handcuffing of R.B. ECF 29, ¶ 14 (alleging Officer Shaw used unreasonable force by forcefully twisting R.B.'s right arm behind his back, sweeping R.B.'s legs out from underneath him and knocking R.B. to the ground, and "aggressively and tightly" handcuffing him).

As to Officer Shaw's actions in knocking R.B. to the ground, the Court finds that even if this force was excessive, there wasn't sufficient time for Officer Snyder to intervene.

Officer Snyder testified that Officer Shaw did not tell R.B. he was going to "take him to the ground" and otherwise gave no other warning to Officer Snyder that Officer Shaw was going to throw R.B. to the ground. ECF 63-1, 32:17-25. The video of the incident corroborates that testimony. Ex. J-4. While there are a few minutes of physical attempts by mostly Officer Shaw to guide a resisting R.B., things appear relatively calm. But, then, at the 17:24 mark, Officer Shaw abruptly uses his forearm to essentially clothesline R.B. and take him to the ground. *Id.* R.B. remains on the ground until Officer Snyder helps him up, which is at 17:34 of the video. *Id.* The entire incident, from Officer Shaw taking R.B. to the ground to Officer Snyder helping him up, lasts 10 seconds. *Id.*

Based on this video, the take-down was abrupt and way too quick for anyone to intervene. No reasonable jury could conclude that there was a reasonable opportunity for Officer Snyder to intervene, so summary judgment is appropriate. *Byrnes*, 2016 WL 4508245 at *5 (granting summary judgment when a few seconds "elapsed between the time that Plaintiff was brought down to the floor after assaulting [a corrections officer]" and the corrections officer's further assault because no reasonably jury could conclude that the other corrections officers had a realistic and reasonable opportunity to intervene based on video evidence). Thus, Officer

Snyder is entitled to summary judgment on the portion of the failure-to-intervene claim related to Officer Shaw's actions in taking R.B. to the ground.

The portion of the failure-to-intervene claim related to Officer Shaw's handcuffing of R.B. is a closer call, but the Court concludes that there are sufficient facts presented for this claim to proceed to a jury.

Officer Shaw handcuffed R.B. after Officer Snyder helped R.B. up off the ground. ECF 63-1, 55:18-23. Officer Snyder testified that he didn't recall if R.B. stated that the handcuffs were painful or too tight. ECF 63-1, 42:25-43:5. But R.B. testified that he told Officers Shaw and Snyder "hey, these are tight, like they're hurting my wrists," after which the officers told him they would check the handcuffs when they got to the school. ECF 63-2, 28:11-18. They later removed the cuffs at the assistant principal's office. ECF 63-1, 43:6-9; ECF 63-2, 29:22-25. R.B. had bruises on both wrists from the handcuffs, which went away in "maybe two days." ECF 63-2, 37:17-24; 38:12-13. But R.B. did not receive medical treatment for the bruises on his wrist. *Id.* at 38:2-4. In the surveillance footage, R.B. does not show any obvious visible indicators of pain after Officer Shaw handcuffs him. Ex. J-4.

Based on these facts, whether the use of handcuffs here and the manner in which they were used was reasonable is too disputed for the Court to decide. Reasonableness is usually a question for the jury unless "the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances[.]" *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (cleaned up). As stated above, factors used to evaluate whether the force was reasonable include the severity of the crime at issue, whether the plaintiff posed a threat to the safety of officers, whether the plaintiff was violent or dangerous, the duration of the encounter, whether the plaintiff was armed, and other facts and circumstances of the case. *Graham*, 490 U.S. at 396; *Rivas*, 365 F.3d at 198.

Here, the "crime" was vaping on school property, which, while certainly a violation of school policy, is not a violent or serious crime. There is no evidence in the record that R.B. was violent or dangerous, and he was not armed. Officer Snyder did testify that R.B. resisted Officer Shaw's efforts to lead R.B. to the office shortly before Officer Shaw took R.B. to the ground. ECF 63-1, 49:21-50:6. But the resistance by R.B. as captured on the video was fairly benign. Moreover, Officer Snyder also testified that R.B. was not behaving in a threatening manner towards him or Officer Shaw. *Id.* at 33:1-6. Considering the totality of the facts and the circumstances of the case, and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that there is a genuine issue of material fact over whether the use of any handcuffs *at all* was reasonable. *See Mounshar v. City of Philadelphia*, No. 15-4168, 2016 WL 3997057, at *5 (E.D. Pa. July 26, 2016) (denying summary judgment on handcuffing claim, despite the plaintiff's lack of injury, because the officer didn't offer any explanation of why it was necessary to handcuff plaintiff in light of the circumstances).

Officer Snyder makes two arguments on this point—neither is persuasive. First, he argues that the handcuffing wasn't unreasonable because R.B.'s injuries were minor. That's true—R.B. simply had bruises on his wrists. But minor injuries aren't disqualifying. *Mounshar*, 2016 WL 3997057 at *5 ("the core judicial inquiry, for . . . excessive force claims is the nature of the force, not the extent of the injury." (cleaned up)). The severity of the injuries is just one factor for the Court (or jury) to consider in assessing the reasonableness of the handcuffing.

Second, Officer Snyder points to the tight-handcuffing cases within this Circuit, to argue that tight handcuffs, alone, cannot support an excessive-force claim. But this misses the threshold question: as noted above, the Court finds that there are serious questions of fact as to whether any handcuffs were required *at all*. A jury

could easily conclude that an unarmed high school student walking down the sidewalk and accused of vaping doesn't reasonably warrant the use of handcuffs.

But even if it were indisputable that the use of handcuffs was appropriate, R.B. did complain about the cuffs to the officers, the cuffs were not removed until he was walked back into the school to the assistant principal's office, and he had bruises that lasted two days. Under similar scenarios, courts have found that an injury, combined with the plaintiff's complaint over the use of tight cuffs, was unreasonable force, and took the cases outside of the "tight handcuffs alone" body of cases. *See, e.g., Douglass v. Penn Hills Borough*, No. 07-685, 2009 WL 412693, at *7 (W.D. Pa. Feb. 18, 2009) (Ambrose, C.J.) (denying summary judgment because the plaintiff submitted evidence that she asked for the defendants to loosen her cuffs, hospital records showed that her wrists were swollen and bruised, and she eventually required carpal tunnel surgery).[3]

---

[3] To be fair to Officer Snyder, the "tight handcuffing" cases are a mixed bag. Usually there has to be more evidence than just bruising. Even in *Douglass*, the plaintiff went to see a medical provider and had to have surgery, which was indicative of unreasonable use of force. *See also Benckini v. Coopersburg Borough*, No. 05-5122, 2008 WL 2156713, at *7 (E.D. Pa. May 21, 2008) (granting summary judgment in favor of defendant because, although the plaintiff introduced evidence that he complained that the handcuffs were too tight, he never sought medical care); *Lane v. Schade*, No. 15-01568, 2018 WL 4571672, at *5 (D.N.J. Sept. 24, 2018) (granting summary judgment on handcuffing claim because plaintiff did not exhibit obvious visible indicators of pain and suffered no injuries). This case falls somewhere between *Benckini* and *Lane*, on one hand, where the plaintiffs alleged tight handcuffing but suffered no injury, and *Douglass*, on the other, where the plaintiff alleged tight handcuffing and required treatment for serious injuries. But, again, this analysis on the tightness of the cuffs is only part of the reasonableness equation. And for the reasons noted above and construing the facts in Plaintiffs' favor, there are genuine disputes of material facts surrounding the reasonableness of the use of handcuffs at all in this case.

For these reasons, Plaintiffs have presented sufficient evidence that the use of cuffs was an unreasonable use of force, and so Officer Snyder's failure to intervene presents a viable claim that may proceed to trial.[4]

## II. False Imprisonment.

In Counts II and IV of the amended complaint, Plaintiffs bring claims for false imprisonment, one under Section 1983 and one under Pennsylvania law. Because the elements under Section 1983 and Pennsylvania law are the same, the Court analyzes both claims together. To succeed on a Section 1983 false-imprisonment claim, "a plaintiff must establish: (1) that [he] was detained; and (2) that the detention was unlawful." *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012). Under Pennsylvania law, "[t]he elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Whether or not the detention was lawful turns on whether probable cause existed. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016) ("false arrest or imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged[.]").

The parties do not dispute that R.B. was detained. ECF 62, p. 12; ECF 66, p. 8 n.4. The only open question is whether there is evidence in the record that creates a genuine issue of material fact about whether Officers Shaw and Snyder had probable cause to detain R.B. On careful review, the Court finds that Officer Snyder had probable cause to detain R.B.; Plaintiffs have not proffered any evidence to dispute this.

Officer Snyder testified that he observed R.B. vaping on school grounds. ECF 63-1, 24:2-25:3. Both Officer Snyder and R.B. knew that vaping on school grounds

---

[4] The video in this case clearly reflects that if Officer Shaw's actions in handcuffing R.B. were unreasonable, Officer Snyder had plenty of time to intervene. Ex. J-4. So this is not an issue.

was against school policy. *Id.* at 25:14-16; ECF 63-2, 13:10-14 (discussing receiving citation for prior vaping incident). Thus, probable cause existed for the officers to detain R.B. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 149 (3d Cir. 2005) (finding detention of student appropriate under the lessened reasonableness standard that applies to violations of the Fourth Amendment's protection against seizures in the school context because the purpose of the detainment was to determine whether the student committed wrongdoing); *Salyer v. Hollidaysburg Area Sch. Dist.*, No. 16-57, 2018 WL 3579838, at *13 (W.D. Pa. July 25, 2018) (Gibson, J.) (citing to *Shuman* and granting summary judgment on false-imprisonment claim because the purpose of the detention was to investigate misconduct). Plaintiffs point to two pieces of record evidence that purportedly create a genuine issue of material fact. But neither cuts it.

First, Plaintiffs point to R.B.'s testimony that he didn't recall vaping on school grounds on that particular day. ECF 66, p. 8; ECF 63-2, 22:8-11 ("Q: Let's talk about the incident itself. First of all, where you vaping on [the date of the incident]? A: I can't recall."); *id.* at 24:1-6 ("Q: Let me interrupt you. As you were walking down and saw the police officer in the cafeteria, do you recall, does this refresh your recollection as to whether or not you were vaping at that time? A: No."); *id.* at 26:18-20 (same)).

Not recalling something doesn't create a dispute of fact. Indeed, "[n]umerous courts have held that a plaintiff's lack of recollection does not create a genuine issue of disputed fact." *Bracy v. Macy's Retail Holdings, Inc.*, No. 19-3825, 2020 WL 1953647, at *7 (E.D. Pa. Apr. 23, 2020) (granting summary judgment for defendant when plaintiff stated that she didn't recall receiving an arbitration agreement). This principle applies to Section 1983 claims, as well—"no issue of fact exists when the testimony of each of the relevant witnesses as to [an] issue is consistent and the only response is 'I don't recall.'" *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 942 (3d Cir. 2007) (affirming district court's entry of summary judgment on Section 1983

failure-to-train claim when the plaintiff had no recollection that he acted violently "separate and apart" from the fact that plaintiff admitted to "crazy" conduct); *see also Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) (finding plaintiff's lack of recollection of whether he drove through a red light insufficient to create a genuine dispute of material fact). Because R.B.'s testimony was that he could not remember whether he was vaping, this record evidence is insufficient to create a genuine dispute of material fact.

Second, Plaintiffs point to the surveillance footage, arguing that the footage "did not capture any evidence of Plaintiff R.B. vaping on school grounds." ECF 66, p. 8. After reviewing the surveillance footage, the Court finds that it does not move the needle. The first fifteen minutes or so of the video follow Officer Snyder as he sits at his desk and moves throughout the school. Ex. J-4. At no time during this part of the video is R.B. visible. *Id.* R.B. first appears in the video at 15:56. *Id.* Officer Snyder testified that he observed R.B. vaping and called Officer Shaw before both of them exited the school building, which occurred before R.B. appears on camera. ECF 63-1, 25:4-25; Ex. J-4. Because the video does not show R.B. during the time that Officer Snyder alleges that he saw R.B. vaping, it cannot support or contradict Officer Snyder's testimony. Thus, the video cannot create a genuine dispute of material fact.

Because Plaintiffs have put forth no record evidence to contradict Officer Snyder's testimony that R.B. was vaping, the Court finds that probable cause existed to detain R.B. for the violation. That means for purposes of the false-imprisonment claims, the detention was not unlawful. The false-imprisonment claims must be dismissed.

\* \* \*

Therefore, after careful consideration, it is hereby **ORDERED** that Officer Snyder's Motion for Summary Judgment (ECF 61) is **GRANTED** in part and **DENIED** in part, consistent with the above.

Date: February 13, 2025                                    BY THE COURT:

/s/ J. Nicholas Ranjan<br>United States District Judge